By the Court.
In February of 1913, the relator, Timothy S. Hogan, attorney general of Ohio, filed his petition in quo warranto in the court of appeals of Franklin county against John Renschler, resident of Hancock county, Ohio, charging the *364 respondent with unlawfully exercising the franchise and privilege of writing life insurance.
It appears from the agreed statement of facts set forth in the record that the respondent, Renschler, was, at the time of the institution of this action and at the time of making the contracts hereinafter mentioned, engaged as an individual in the undertaking business in the city of Findlay, Hancock county, Ohio; that in connection with such business and to further its volume, Renschler, during the last two years, not acting as a corporation, partnership, firm or association, or as the agent or member of any such, but wholly in his individual capacity as a natural person, entered into certain written contracts with certain other parties, of the following nature:
The contract was termed a mutual note whereby the party of first part promised to pay to respondent during the natural life of first party the sum of fifteen cents (termed “interest”) on or before the 10th of each month in advance. The face value of the note varied from $50 to $100. The contract or note provides that if the said first party be not in default at time of his or her death, the second party, Renschler, agrees to furnish funeral for said first party.
There are many stipulations in the so-called mutual note, among which are these provisions:
1. That any person in good health from one to sixty years of age can purchase one note as follows: one to ten years of age shall pay eight cents interest per month on a $50-note contract; ten to sixty years of age shall pay fifteen cents interest per month on a $100-note contract.
*365 . 2. . The object of. the note is to provide the holder with a respectable burial, .such funeral to be - furnished and conducted by the respondent his heirs Or assigns only., < ■ '•••.'
1 3. After period of one year’s payments has been completed; .the holder may discontinue payments and will receive a credit slip* which slip may be applied on his or her funeral expenses, provided the funeral be conducted by respondent. '• •'
., 4.'' Note not payable in cash and'redeemable for ite.face in such goods as handled by the respondent to b'e .selected by his ór hen heirs, or-friends' making., funeral arrangements.- • •’ - ;•'" ■ •■••
5:. ■. If holder'.of' note was not in good health at time, of’issue or if obtained through fraud, itahall be deemed void. .; ■ •
; It further appears from the'agreed'statement-of facts that the respondent' has entered into a number of such contracts, all, however, confined to1 the territory .within which he operates as undertaker; that he is receiving monthly payments, termed .“interest,” on mutual notes from many parties, both young and old, and has been ready, able and willing to comply with the terms'of the contract,"and as an individual undertaker has in fact complied with the terms thereof on the death of any holder of such- mutual, note and is now furnishing funeral outfits whenever any of the holders of such notes decease,
It is also made to appear that the: respondent has never, applied, for or received any license or permission to transact any insurance .business; from the superintendent of insurance of Ohio, or. from *366 any other officer or branch of the state government, nor has he made any report of the nature or extent of his business to the said insurance department.
In February, 1914, the court of appeals of Franklin county, on the foregoing agreed facts, entered its decree of ouster against the respondent, and error was thereupon prosecuted by respondent ,(o this court.
Held,: The so-called mutual note is clearly insurance. By all the tests to which the contract may be subjected, it unerringly leads one to the conclusion that the intention of the parties was on the one hand to receive and on the other to provide a fund to pay the burial expenses of the insured.
The contract being naked insurance and nothing else, it is subject to regulation by the insurance department. State, ex rel., v. Wichita Mutl. Burial Assn., 73 Kans., 181; Fikes v. State, 87 Miss., 251; State v. Willett, 171 Ind., 296; Guenther on Insurance, section 191; 1 May on Insurance (4 ed.), section 27; Robbins v. Hennessey, 86 Ohio St., 181.
Even if individuals, acting as purely natural persons, can carry on the business of insurance and exercise the functions of such, they must comply with all of the laws of Ohio on the subject of life insurance, Section 670, General Code, reading: “The provisions herein relating to the superintendent of insurance shall apply to all persons, companies and associations, whether incorporated or not, engaged in the business of insurance,”
It may well be questioned whether a franchise of this character, which by its very nature presupposes perpetuity, could be granted to an individual. *367 See Robbins v. Hennessey et al., 86 Ohio St., 181; State, ex rel., v. Ackerman et al., 51 Ohio St., 163. But if it be granted that Section 670, General Code, above quoted, would authorize the issuing of such a franchise to an individual, such individual would be bound by all the restrictions and- requirements of an incorporated company.
To hold otherwise would work a far-reaching hardship on that part of our population most needful of the protection of the state and lead to a recrudescence of the old wildcat insurance days, now happily a thing of the past.

Judgment affirmed. ■

Nichols, C. J., Shaucic, Johnson, Donahue, Wanamaker, Newman and Wilkin, JJ., concur.