(No. 5759. November 30, 1931.)

INTERMOUNTAIN LLOYDS, an Unincorporated Association of Individuals Engaged in Insurance Business, THE ASSOCIATED UNDERWRITERS' CORPORATION, a Utah Corporation, and R. G. ABBEY, Suing on His Own Behalf and on Behalf of All Other Members of Said INTERMOUNTAIN LLOYDS, Respondents, v. BEN DIEFENDORF, as Commissioner of Finance of the State of Idaho, and WARREN BAKES, as Director of Insurance of the State of Idaho, Appellants.

[5 Pac. (2d) 730.]

Fred J. Babcock, Attorney General, and Sidman I. Barber, Assistant Attorney General, for Appellants.

Clarence T. Ward, for Respondents.

McNAUGHTON J.—Intermountain Lloyds, an association of underwriters doing business as a fire insurance company in Utah, seeks a certificate of authority to engage in the business of writing fire insurance in this state. The Commissioner of Finance and Director of Insurance have refused to consider the application on the ground that the plan or set-up of this association does not afford such a business entity as may lawfully do a fire insurance business in this state. Thereupon this action for a writ of mandate was begun to compel the defendant officers to consider the application.

In the lower court a demurrer was interposed which was overruled by the trial court and upon the defendants' electing to stand upon the demurrer, judgment was entered. The judgment, instead of directing the department officials to entertain the application of plaintiffs as by a lawful applicant, directs the issuance of the writ.

The defendants appeal. The main contention is that the court erred in overruling the demurrer and granting any relief. A secondary claim is that the court erred in the judgment entered because instead of requiring the officials to act in the premises, the judgment acts for them in relation to a matter not purely ministerial but involving discretion.

Intermountain Lloyds is an aggregation of individuals not incorporated, organized under chapter 85, Utah Session Laws of 1929. The Utah law expressly authorizes associations of individuals, partnerships and corporations designated as underwriters, to engage in the business of insurance in that state, as insurers on the Lloyds plan. By this plan such underwriters may deposit securities for the protection of the policy-holders and operate through an attorney-in-fact as an association of individuals not incorporated.

The powers of the association are derived solely from the power of attorney subscribed by the underwriters. Pursuant to the power of attorney each individual has deposited securities with the insurance commissioner of Utah. These securities are liable proportionately for all losses on insurance policies written on behalf of the association. The securities. remain the property of the member depositing them. Liability is limited strictly to the securities deposited and this liability is several, not joint. The securities deposited by each member are security only for his proportion of any loss. The amount of loss chargeable against each member or his securities only bears the same ratio to the total loss as the amount deposited by him bears to the deposits.

On the merits, the state raises two main questions. (1) Whether the plan of association effected which constitutes Intermountain Lloyds is a business entity authorized to enter the state and do a fire insurance business within the purview of our statutes regulating fire insurance companies or principals. (2) Whether its deposit of securities pursuant to and as authorized by the power of attorney complies with our statutory requirements for the deposits of insurance companies applying to do insurance business in this state.

The questions presented are of first impression in this court. The matter of the right of this same association to a certificate authorizing it to write fire insurance in Montana was before the supreme court of that state in the case of *State ex rel. Intermountain Lloyds v. Porter,* 88 Mont. 347, 294 Pac. 363, but the question raised was quite differ-

ent from either question raised here. It was claimed in that case that the plaintiff could not qualify for want of capital stock as required by the insurance laws of Montana. The court held that the securities deposited by the underwriters are in reality capital stock and satisfy the requirements of the Montana statutes.

Inasmuch as the questions here arise out of the requirements of local statutes, decisions in other jurisdictions not dealing with like or similar statutes are of little or no assistance.

■ The right to carry on the business of insurance in this state, as in most states, is carefully regulated by statute. It is quite generally held and we hold that the public interest is so affected by the insurance business carried on in the state that private right of contract must be subjected to the police power of the state prescribing the terms and conditions on which it may be conducted and in regulating the business and all who are engaged in it. (*German-Alliance Ins. Co. v. Lewis,* 233 U. S. 389, 34 Sup. Ct. 612, 58 L. ed. 1011, L. R. A. 1915C, 1189; *National Union Fire Ins. Co. v. Wanberg,* 260 U. S. 71, 43 Sup. Ct. 32, 67 L. ed. 136; *Citizens Ins. Co. v. Clay,* 197 Fed. 435; *State ex rel. National Mutual Ins. Co. v. Conn,* 115 Ohio St. 607, 50 A. L. R. 473, 155 N. E. 138.)

Pursuant to this power the legislature has enacted C. S., sec. 4942, which provides:

"Whenever any number of persons shall associate to form an insurance company for any of the purposes named in the preceding article they shall file a copy of the articles of incorporation with the department of commerce and industry, which shall submit the same to the attorney general for examination; and, if found by him to be in accordance with the provisions of this chapter, and not inconsistent with the constitution of this state, he shall certify and deliver back the same to the department, which shall commission the persons named in the certificate of incorporation, or a majority of them, to open books for the subscription of stock in the company at such time and place as

they shall deem it convenient and proper, and shall keep the same open until the full amount specified in the certificate of incorporation is subscribed.

"When the said articles of incorporation have been deposited with the department of commerce and industry, and the law in all other respects has been complied with by the company, the department shall make an examination, or cause one to be made by some competent and disinterested person appointed by it for that purpose; and, if it shall be found that the capital stock of the company, to the amount required by law, has been paid in and is possessed by it, in money or such other securities as are required by law, and that the same is the *bona fide* property of such company, and that such company has in all respects complied with the law relating to insurance, then the department of commerce and industry shall issue to such company a certificate of authority to commence business as proposed in their articles of incorporation."

In the exercise of its protective or police power the legislature may undoubtedly confine the insurance business to corporations. Such statutes are not held to deny a right in natural persons to engage in the insurance business, but to require all desiring to enter upon the business to do so as an insurance corporation is held to be a valid regulation. (*Commonwealth v. Vrooman*, 164 Pa. 306, 44 Am. St. 602, 30 Atl. 217, 25 L. R. A. 250.)

We do not understand that it is claimed that a group of individuals could organize under the Lloyds plan and obtain a permit to do an insurance business in this state. But it is claimed that such a permit can be and has been procured in Utah and that a status is acquired by such fact which authorizes them to enter this state as a foreign insurance company.

C. S., sec. 4950, provides:

"Any foreign insurance company having the required amount of capital, or assets, *when permitted by its articles of incorporation or charter,* may be authorized and licensed by the department of commerce and industry to make in-

surance in this state under one or more of the classes pre-
scribed in article 2 of this chapter: Provided, That said
provisions requiring a surplus shall not apply to any joint
stock insurance company licensed to do business in this
state on January 1, 1913, or be so construed as to require
the maintenance of such surplus by such company after
admission into this state." (Italics ours.)

It is claimed on behalf of respondents that the certificate
authorizing respondents to engage in the business of fire
insurance by the state of Utah satisfies the requirements as
to articles or charter and that the section does not require
such authorized foreign companies to be incorporated. The
situation seems rather anomalous. Here we have a foreign
association or company seeking a permit to write insurance
in this state, which as a domestic association or company
would be disqualified for want of compliance with C. S.,
sec. 4942.

Sec. 10, art. 11, of the Constitution in part provides:

" . . . . no company or corporation formed under the
laws of any other country, state, or territory, shall have or
be allowed to exercise or enjoy, within this state any
greater rights or privileges than those possessed or enjoyed
by corporations of the same or similar character created
under the laws of this state."

Section 16 of the same article provides:

"The term 'corporation' as used in this article, shall be
held and construed to include all associations and joint
stock companies having or exercising any of the powers or
privileges of corporations not possessed by individuals or
partnerships."

The moving cause back of the Lloyds plan is the limited
liability enjoyed by the associates creating it, similar to
that enjoyed by corporate stockholders generally. This is
a privilege not possessed by individuals or partnerships.
Many other such features might be enumerated. (*State ex
rel. Richards v. Ackerman*, 51 Ohio St. 163, 37 N. E. 828, 24
L. R. A. 298; *Greene v. People*, (Ill.) 21 N. E. 506.) These
features bring associations under the Lloyds plan within

the prohibition of sec. 10, art. 11, of the Constitution, which prohibits the legislature from authorizing foreign companies to enter and exercise greater rights or privileges than may be exercised by corporations (associations and joint stock companies) of similar character created under the laws of this state.

It would therefore seem that C. S., sec. 4950, is unconstitutional if it contemplates authorizing unincorporated associations doing business as such in other states to write insurance in this state.

■ The legislature having by C. S., sec. 4942, required that persons associating to do insurance business in this state shall incorporate, we find that C. S., sec. 4950, was not intended by the legislature to authorize the entry in this state of companies not incorporated and not having ordinary articles of incorporation or a charter showing corporate power to do such insurance business.

It therefore follows that the judgment of the district court must be reversed on the ground that unincorporated associations of underwriters organized by power of attorney either as domestic or foreign companies cannot under our statutes lawfully do fire insurance business in this state. Inasmuch as this ruling disposes of the case, other questions arising need not be discussed.

Judgment is reversed, with directions to dismiss the petition. Costs to appellants.

Lee, C. J., and Givens and Varian, JJ., concur.

Budge, J., sat at the hearing but took no part in this decision.

Petition for rehearing denied.