

# THE ATTORNEY GENERAL
## OF TEXAS

Gerald C. Mann
~~XXXXXXXXXXXXXXXX~~
ATTORNEY GENERAL

AUSTIN 11, TEXAS

Board of Insurance
Commissioners
Austin, Texas

Attention:  Mr. J. J. Timmins

Gentlemen:

Opinion No. O-2749
Re:  Would it be permissible
for the Insurance Department
to issue a permit under the
burial association law and allow
the association to furnish tomb-
stones as merchandise?

Your request for an opinion has been received and care-
fully considered by this department. We quote from your request
as follows:

"I am enclosing letter received from . . . asking
the procedure to be employed for securing a charter
from the Board of Insurance Commissioners for a burial
association and allow them to furnish merchandise con-
sisting of a tombstone, in an amount not to exceed
$150.00.

"Please check Senate Bill 135, Acts of the Forty-
Sixty Legislature, particular__ Sections 23 and 24
thereof, and advise this Department if, in your opinion,
it would be permissible for this Department to issue a
permit under the burial association law and the asso-
ciation to furnish tombstones as the merchandise."

Sections 23, 24, and 25 of Senate Bill 135, Acts of the
Forty-sixth Legislature of Texas, read as follows:

"Sec. 23.  Burial Association.  Any individual, in-
dividuals, firms, co-partnerships, corporations or asso-
ciations doing the business of providing burial or fun-
eral benefits, which under any circumstances may be pay-
able partly or wholly in merchandise or services, not in
excess of One Hundred and Fifty ($150.00) Dollars, or the
value thereof, are hereby declared to be burial companies,
associations or societies, and shall organize under pro-
visions of Chapter 274, Acts of the Forty-first Legisla-
ture, 1929, and amendments thereto; and shall operate un-
der and be governed by Chapter 274, Acts of the Forty-
first Legislature, 1929, and amendments thereto, and this
Act.  It shall be unlawful for any individual, individ-
uals, firms, co-partnerships, corporations, or associa-
tions, other than those defined above, to engage in the

business of providing burial or funeral benefits, which under any circumstances may be paid wholly or partly in merchandise or services."

"Sec. 24.  Policies or certificates issued by burial associations shall provide for payment of the benefit in certain stipulated merchandise and burial service, which shall be scheduled in the policy or certificate and approved by the Board of Insurance Commissioners as being of the reasonable value as stated in the face of the policy, unless the insured shall at the time said policy is issued elect to have same paid in cash.  The policy shall show in writing the election made.  If the association issuing said policy shall fail or refuse to furnish the merchandise and services provided for in the policy, same shall be paid in cash."

"Sec. 25.  Rules and Regulations.  The Board is hereby authorized to promulgate reasonable rules and regulations to carry out the purposes of this Act."

9 Corpus Juris, Page 1100, defines the term "burial" as follows:

"Burial.  The act of interring the dead."

Words and Phrases, Vol. 5, Permanent Edition, Page 961, defines the term "burial" as follows:

"Word 'burial' means act of burying a deceased person, sepulture, interment, act of depositing a dead boty in the earth, in a tomb or vault, or in the water; the act of interring the human dead. . . Brady v. Presnell, 169 S.E. 278, 280, 204 N.C. 659."

27 Corpus Juris, Page 929, defines the term "funeral" as follows:

"Funeral.  The disposition of human bodies after death, with the accompanying rites and ceremonies."

1 Joyce on Insurance 7c defines burial insurance as "a contract based upon a legal consideration whereby the obligor undertakes to furnish the obligee, or one of the latter's near relatives, at death, a burial reasonably worth a fixed sum."  Also see the cases of Sisson, et al., vs. Prata Undertaking Company, 141 A. 76; State ex rel Fishback vs. Globe Casket and Undertaking Company, 143 P. 878; Renschler vs. State 107 N.E. 758.

Burial associations are associations which provide for the burial of its members.  See the case of State ex rel Coleman

vs. Wichita Mutual Burial Association, 73 Kansas 179, 84 Pacific 757.

        We quote from the case of State ex rel Fishback vs.
Globe Casket and Undertaking Company, 54 L.R.A.N.S. pages 977,
978, and 979 as follows:

        ". . . These certificates are in two forms. In the
    one the corporation agrees, on the death of the holder,
    ' to take charge of the burial of said holder, and pro-
    vide the necessary furnishing and materials therefor to
    the value of one hundred ($100) dollars as follows:  One
    black broadcloth, white or colored plush casket; one out-
    side box for casket; one hearse two carriages; one burial
    robe; necessary embalming; necessary accessories; and
    services of funeral director.'  The other is similar in
    form, with the exception that it does not name the value
    of the furnishings, and provides that the corporation
    will take charge of the funeral of the holder 'on the sur-
    render of this receipt,' and will furnish the hearse and
    two carriages in places only where they are obtainable.
    . .

        "That contracts of the nature of the contract here
    in question are insurance contracts, and subject to con-
    trol under the insurance statutes, is the general trend
    of authority.  In State ex rel. Coleman v. Wichita Mut.
    Burial Asso. 73 Kan. 179, 84 Pac. 757, the organization
    in question was one estensibly to secure to the members
    thereof a decent burial.  The expenses were defrayed by
    assessments levied upon the members.  Two classes of cer-
    tificates were issued, one entitling members to a funeral
    worth $100, and the other a funeral worth $50, accordingly
    as they paid the greater or lesser assessment.  It was
    organized by an undertaker, through whom alone burials
    could be had.  The court held the association an insurance
    company and subject to the insurance laws of the state.
    Passing upon the question, the court said:  'We conclude
    from the foregoing facts that the business designed to be
    transacted under the plan of the Wichita Mutual Burial
    Association is plain, ordinary insurance.  Membership in
    this association insures to each member above ten years
    of age that which is equivalent to $100 cash, payable at
    the death of such member to whomsoever would otherwise
    defray the burial expenses of such decedent.  If the cer-
    tificate of membership issued by this burial association
    be designated a "policy," the assessment a "premium," and
    those who are relieved from paying the funeral expenses
    of the deceased member "beneficiaries," this association,
    both in general plan and phraseology, would be a substan-
    tial duplicate of the ordinary mutual insurance company.

The fact that no beneficiary is specifically named deserves little consideration, since in reality one exists, and may be ascertained with as much certainty as if directly and specifically mentioned. Whoever would otherwise pay the burial expenses of the deceased member is, by being relieved of that burden, as directly benefited to the amount of such expenses as if the cash were paid immediately to such person. If the deceased member leave an estate, the whole thereof, undiminished by the burial expenses, which would otherwise be paid therefrom, will be received by his heirs. If he leave no estate, then his immediate relatives and friends, who would otherwise have to furnish the expenses of his burial, will be benefited by being relieved of that burden.'

"To the same effect is the case of State v. Willett, 171 Ind. 296, 23 L.R.A. (N.S.) 197, 86 N.E. 68, in which the court used the following language: 'The contract was issued by an association whose declared object was to secure or make certain, by a system of mutual contribution, to each member of the association, at death, the specific benefit of $75 for application to his burial service. This was indemnity or security, that, at the cessation of the life of the member, a certain sum of money would be payable by the association for his burial, whether the deceased had paid one assessment or a thousand. The controlling elements of the contract, as interpreted by the by-laws, are in all material respects similar to those of an ordinary mutual life insurance company . . . It is simply a business enterprise in which the contract holder is promised a definite thing in consideration of his performance of a definite undertaking on his part. . . ."

Section 24 of Senate Bill 135 of the Forty-sixth Legislature of Texas, supra, provides that "policies or certificates issued by burial associations shall provide for payment of the benefit in certain stipulated merchandise and burial service, which shall be scheduled in the policy or certificate and approved by the Board of Insurance Commissioners as being of the reasonable value as stated in the face of the policy, unless the insured shall at the time said policy is issued elect to have same paid in cash." The statute also provides that the policy shall show the election made, and provides that if the burial association fails or refused to furnish the merchandise and services provided for in the policy that the association then must pay the benefits in cash.

We have been informed by the Board of Insurance Commissioners that they have approved many policies of burial insurance as outlined by Section 24, supra, providing for certain stipulated items of burial and funeral merchandise and services. The Board

furnished us with a copy of a certificate or policy of a burial association which contains benefits usually listed by burial associations and approved by the Board. Such stipulated merchandise and service are as follows: .

## "BENEFITS

"The funeral service and merchandise covered under this policy shall consist as follows:

1. Casket and substantial outside box, casket to be octagon end, oval top hinged cap, made of cypress wood, covered with crepe, lined with silk, trimmed with full length extension handles.

2. Care and Preparation of the remains.

3. Burial Garment, either suit or dress.

4. Door Badge , Casket Veil, Pallbearers' Boutonnieres, Press Notices, Use of Funeral Chapel if desired, or services conducted in home or church if preferred, and Memorial Record Book.

5. Cemetery and Funeral Equipment. The above does not include cemetery fees and expenses.

6. Transportation of flowers, metal grave markers, and floral acknowledgment cards.

7. Use of Hearse Service to any point within a radius of seventy-five (75) miles of Austin, Texas, this service to include transferring remains from the home, hospital, or point of death to the Funeral Home; return to the home, to the Church or Chapel and to the cemetery."

The above listed items of burial merchandise and funeral services would provide a respectable burial for a deceased person. It is our opinion that a burial association which does not pay its benefits in cash must furnish such merchandise and services as would provide a respectable burial for its deceased member.

We are also of the opinion that the various items of burial merchandise and funeral services are not separately a proper item of burial insurance, that is to say, we do not think an association which agreed to furnish a casket alone, or a shroud alone, or clothing for the deceased alone, or hearse service alone, or embalming service alone, for a regular premium, would be a burial association and should not be granted a charter or licemse as a burial association.

Tombstones or monuments are erected at the grave of a deceased person for the purpose of marking his grave, and for the purpose of perpetuating the memory of said deceased person. Strictly speaking, the erection of a tombstone or monument is no part of a burial. However, our courts in Texas have frequently allowed as funeral expenses in the settlement of a decedent's estate expenses for the erection of monuments and tombstones, dependent upon the condition of decedent's estate.

It is our opinion that the association you describe in your letter which pays its benefits in tombstones alone is not a burial association and should not be granted a permit as such.

Very truly yours

ATTORNEY GENERAL OF TEXAS

/s/  By Wm. J. Fanning
Sm. J. Fanning, Assistant

APPROVED OCT 16, 1940
/s/ Grover Sellers
FIRST ASSISTANT ATTORNEY GENERAL

APPROVED: OPINION COMMITTEE
BY:      BWB, CHAIRMAN

WJF:ew:wb