STATE OF TENNESSEE ex rel. MRS. LORELL MORRIS

*v.*

CITY OF NASHVILLE et al.

(*Nashville,* December Term, 1960.)

Opinion filed March 10, 1961.

ROBERT H. JENNINGS, JR., FRANK S. KING, JR., Nashville, for appellants.

E. C. YOKLEY, Nashville, for appellee.

MR. JUSTICE BURNETT, delivered the opinion of the Court.

This is a mandamus suit brought by Mrs. Morris against the City of Nashville, its Superintendent of the Bureau of Building and Inspections and the Chief Building Inspector of said City, wherein it is alleged that these officials refused to grant her a permit to allow her to use her premises hereinafter described for twenty-four trailer lots. The bill alleges that application for a permit had

been made and denied. On appeal to the Board of Zoning Appeals of the City of Nashville the action of the Building Inspector denying this permit was affirmed.

It is not shown in this record why the ordinary certiorari from this denial was not taken so as to first exhaust the remedies thereunder. Be this as it may, the bill was demurred to for this reason, and along with the demurrer an answer was filed denying the right of Mrs. Morris to use her lot for the purpose of housing twenty-four trailers because to do so would violate zoning and building regulations of the City of Nashville. After this answer and demurrer were filed the parties entered into an agreement to have the matter heard on bill and answer and stipulation. Among other things in the stipulation is a copy of the zoning regulations of the City of Nashville as well as the hearing had before the Board of Zoning Appeals and other matters. The Chancellor granted the writ of mandamus and based the grant thereof on the assumption that the zoning and building regulations, and particularly one in reference to subdivision of lots, did not apply. From this decree the City has seasonably appealed. Briefs have been filed, arguments heard, and after considerable investigation and study we have the matter for disposition.

The property of Mrs. Morris is situated in Nashville and is known as No. 1212 and 1214, Gallatin Road of said City. Said property is comprised of two lots, fronting 160.2 feet more or less on Gallatin Road and extends back between parallel lines approximately 333 feet along the southern side and approximately 360 feet along the northern side. The rear of the property is approximately 158 feet. The property is located in a Commercial A zoning district under the zoning laws and ordinances of the City.

It was purchased by Mrs. Morris in 1946 and a building was erected thereon which fronts on Gallatin Road that has been, and is, used for residential purposes and also for office facilities and a beauty parlor which are lawful uses in the zone in which it is located. Said property had been utilized also as a trailer park where space is rented to persons having trailers. It was on this property that the owner sought a permit to establish on the property in the rear of her house spaces for twenty-four trailers. The City now takes the position that the property only has adequate room in the rear of this residence and office building for four trailers. There has been some controversy and debate in the meantime whether or not four or more trailers would be permitted on the plot of land. This though is not necessary for a decision herein.

Section 8 of the Zoning Regulations is the Section applying to Commercial A districts. This regulation specifies that within this district that no building or structure shall be used, etc., except for certain specified uses thereinafter set out. Most of these are set forth in the bill. In this specification trailers are not referred to specifically one way or the other. A person zoned in this district is entitled to use the property as they would a residence in a residential district with certain exceptions with reference to a stable, etc. Then follows various retail businesses, dry cleaning establishments, garages, etc., that are permitted within Commercial A districts; then there is a specification as to the height of the buildings, then a specification as to rear yards, side yards, court, setback line, etc. Clearly, under this specification for Commercial A districts twenty-four trailers on this piece of property under the stipulation herein with exhibits thereto filed of a drawing showing how these trail-

ers would be located will not comply with the rear yard, side yard, and setback line requirements under this zoning specification. Section 13 of this zoning specification is headed, "General Provisions", and among others is subdivision (g), which reads:

"No building in the rear of the principal building on the same lot shall be used for residence purposes except for domestic employees of the owner or tenants of the principal building, unless such rear building shall conform to the open space requirement of this Article for the principal building and shall have on the same lot an easement of access, unoccupied to a street at least twelve feet wide in addition to any other open space requirements of this Article."

Section 15 is the definition of the terms of this ordinance. Under sub-division (g), Section 13, above, the granting of a permit to set these twenty-four trailers on this lot would likewise violate this provision of the zoning regulation.

Seeking the writ of mandamus Mrs. Morris takes the position that there is no ordinance regulation or law governing trailers in any particular insofar as she is concerned, and that therefore since there is no such regulation the authorities should be required to issue her a permit. Among other things in the bill she avers that an arrest is threatened if she keeps parking these trailers on her property after she had been refused a permit. It is likewise her position that the building code ordinance does not specifically refer to trailers but rather to buildings or dwellings. She likewise takes the position that the zoning ordinance does not refer to trailers in any way but is applicable to buildings and dwellings; and that

since these ordinances do not specifically mention trailers they have no application to regulate or prohibit her use of her lot for the purpose of parking these trailers as she desires to do.

■■ We should have said in the outset that subsequent to the filing of this lawsuit the City did pass certain trailer ordinances which are not applicable herein because they were not in force at the time this permission was sought. The Chancellor made the statement that the mere fact that this ordinance was passed afterwards was another reason why there was nothing in effect at the time upon which the City authorities could base their refusal to grant her a permit to park these trailers on her property. We think this is an erroneous reason, because if there are reasons under the existing laws whereby they could refuse to grant this permit then even though they gave the wrong reason why they didn't do it, they must still be upheld in their refusal to grant the permit if there is a lawful regulation on which their refusal could be based. The fact that this ordinance was drawn and enacted after the beginning of this litigation is a mere prevention to meet similar situations in the future as that arising here, if the City is wrong in the position here taken in refusing this permit.

Obviously, the functional purpose of trailers is to provide a place in which to live. The problems which confront the municipal fathers in governing trailers present problems quite distinct from those traditionally and ordinarily dealt with by the various zoning ordinances. Trailers are *sui generis* and unless the particular local ordinance expressly makes reference to them the courts have had to approach the problem in somewhat an inadequate manner. Normally the local ordinance dealing with

trailers names them as such and in the terms of the ordinance either classifies them as a dwelling or not as a dwelling, depending upon the particular ordinance. The cases on the question are in hopeless disaccord in the rationale as whether to prohibit or permit trailers under the building and zoning ordinances where trailers are not specifically referred to, but ordinarily the result is that the trailer is prohibited where the placing of it is in violation of the clear spirit of the zoning law. The following cases hold that a trailer is a dwelling or building within the meaning of local zoning ordinances or building code ordinances and hence its use is prohibited; *Corning v. Town of Ontario,* 204 Misc. 38, 121 N.Y.S.2d 288; *Commonwealth v. McLaughlin,* 168 Pa.Super. 442, 78 A.2d 880; *Kimsey v. City of Rome,* 84 Ga.App. 671, 67 S.E.2d 206; *Lower Merion T. P. v. Gallup,* 158 Pa.Super. 572, 46 A.2d 35 (Supreme Court of the United States, 329 U.S. 669, 67 S.Ct. 92, 91 L.Ed. 591, denied a writ because there was no Federal question involved). Then there are cases that hold that a trailer is not a dwelling or building and therefore is prohibited under provisions of a local ordinance; *Town of Marblehead v. Gilbert,* 334 Mass. 602, 137 N.E.2d 921; *City of New Orleans v. Louviere,* La.App., 52 So.2d 751. There are also cases which hold that a trailer is not a dwelling or building and is permitted under the provisions of the local zoning or building ordinances; *In re Wiley,* 120 Vt. 359, 140 A.2d 11; *Brodnick v. Munger,* Ohio Com.Pl., 102 N.E.2d 48.

In the Georgia case *(Kimsey v. City of Rome,* supra) that court held under a zoning ordinance which required that residences have so many square feet in the building was violated when a woman placed a trailer on the rear of her lot for her son and daughter to live in as a home

because this trailer did not have the square footage required in the ordinance for a residence. The case, that is this Georgia case, was primarily bottomed on a Fifth Circuit (Federal Court) opinion cited in the case [*Aetna Life Ins. Co. v. Aird*, 108 F.2d 136, 125 A.L.R. 1436] and a long quotation therefrom which is very interesting reading of why a trailer is a house or dwelling within the ordinance. In some of the New York cases that we have read and cited above, and others that we have read and that are not necessary to cite, the person who put a trailer on a back lot in violation of a zoning ordinance was arrested and fined for doing so as the courts there held by putting the trailer there it became a dwelling and this was a violation of the zoning ordinance. In other words the person who put the trailer there didn't have a permit to do so and the courts held that under the zoning ordinance limiting it to certain family dwellings, etc., a permit was required. We have read a number of cases pro and con about the subject and cite them herein primarily to show the fact that the authorities in Nashville in denying this permit had a legal basis back of their denial on which to pitch such a denial and that such a denial was not an unreasonable and arbitrary action on their part.

■■ In the *In re Wiley* case, supra, the facts of that case were that the authorities granted the permit to put the trailers on the lot and an adjoining property owner sought to have the trailers removed because they were violating the zoning regulations. The court in that case applied the principle sought to be applied by Mrs. Morris herein that since there was no mention in the zoning ordinance or the building code of trailers that these two codes could not be applied to the situation because the restrictions in these zoning and building ordinances are in dero-

gation of common law and should be strictly construed. Of course, the rule in this State is that zoning ordinances, because they deprive the owner of property use of his land which would otherwise be lawful, are to be strictly construed in favor of the property owner. *Red Acres Imp. Club v. Burkhalter,* 193 Tenn. 79, 241 S.W.2d 921. We think though that there is another well-established principle in reason and logic which under the circumstances of each particular case must be applied, and that is that when these zoning ordinances fail to mention trailers by name, but they prohibit the use and maintenance of the lot in various and sundry ways, that then if the use of the trailers thereon would bear a reasonable relationship to the purposes for which the zoning is intended to promote we must hold that where they do violate the letter and spirit of the zoning ordinance, then they are prohibited.

Reading the decisions from over the country on the question we find that they highlight the fact that the use of trailers as permanent residences present problems which ofttimes are inimical to the general welfare. Of course, in the first place there is the obvious health and safety hazard which must be first considered by the municipal authorities. This record shows that the health regulations would not be violated by the granting of this permit. These authorities must likewise take into account the fire, traffic and many other hazards that might attach to the grouping of a number of trailers, which are dwellings, in a locality contrary to the basic concepts of sound zoning. Sound zoning is the encouragement of the most appropriate use of the land and its conservation of property value, and if the indiscriminate location of trailers within a municipality is permitted this may seriously

harm. Of course, we do know that the location of trailers might stifle development unless they are properly supervised and located. Another viewpoint under the zoning regulations is the aesthetic view, and this likewise is entitled to consideration.

Zoning regulations, of course, must observe long-range needs of the future as well as present needs, and the thought both pro and con is improving sound planning.

■ As said in the outset hereof this is a mandamus suit. It is a well-established principle and rule in a suit for mandamus that the courts will not by mandamus disturb decisions and actions of boards and officers having discretionary powers, except where they act in an arbitrary and oppressive manner, or act beyond their jurisdiction, or where they refuse to assume jurisdiction which the law devolves upon them. *State ex rel v. Board of Education of Blount County,* 122 Tenn. 161, 121 S.W. 499. The bill in this case is couched in language and bottomed on the sole proposition that there was no authority in law for these officers to refuse the permit herein and that this being true (the officers applying the wrong reasons, regulations, etc., to their refusal) they should be made by process of mandamus through the courts to execute such a permit.

■ We have shown, clearly to our satisfaction, by what has been said heretofore that there is a very reasonable basis wherein the officers might and should to their satisfaction deny this permit. There being a satisfactory reason, as shown by what we have pointed out that various courts have held under related situations of why this permit should not be granted, then the court should not lend its power to compel these officers to grant these

permits. There has been absolutely no showing of any unreasonable or arbitrary or capricious action on their part in doing so. The fact is by reading their statements made before the zoning board (their reasons were wrong, we think) they clearly show that they were not denying these things arbitrarily or capriciously but out of a feeling somewhere back in their minds that they knew under the circumstances here this was a violation of some regulation and was wrong and should not be permitted and they were not going to lend their official act to permitting such action. We base this opinion entirely on the proposition that mandamus would not lie because the city officers did not act arbitrarily, unreasonably or capriciously in their denial of this permit.

In view of the fact that there is no mention of the question on which we pitch this opinion in the record before the Chancellor we tax the costs of the appeal against the City. The costs below will be taxed against the property owner and sureties on her execution bond.